IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MATTHEW RANKIN, MELANIE TRIMBLE, AND BRANDON MICHAEL WHITE, | § § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 9:24-CV-00027 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| VS. | § | |
| | § | |
| CITY OF LIVINGSTON, DETECTIVE KALEB BARKER, AND DETECTIVE LEON MIDDLETON, | § § § § | |
| *Defendants*. | | |

## <u>ORDER GRANTING DEFENDANTS CITY OF LIVINGSTON, DETECTIVE KALEB BARKER, AND DETECTIVE LEON MIDDLETON'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Court are Defendants City of Livingston, Kaleb Barker, and Leon Middleton's

Motion for Summary Judgment and their Supplement to Defendants' Motion for Summary

Judgment [Dkts. 39-1, 45].[1] For the following reasons, the Court **GRANTS** the motion.

### I.    BACKGROUND

**A.  Factual Background**

The Plaintiffs describe themselves as "First Amendment auditors." [Dkt. 14 at ¶ 99]. Each

runs a police accountability channel on YouTube. Plaintiff Matthew Rankin runs "hbomatt" and

"describes himself as a 'Constitutional activist and journalist focused on 2nd amendment rights

and police accountability.'" *Id.* at ¶ 27. Plaintiff Melanie Rankin's channel is "Blue the Blue Line

Watcher," whose description is "Our Veterans fought for OUR Freedom and Rights, and OUR

PUBLIC SERVANTS WILL BE EDUCATED and HELD ACCOUNTABLE." *Id.* Plaintiff

---

[1] The Plaintiffs dismissed their claims against Officers Christopher Simmons, Scott Paske, and Ronnie Bogany with prejudice in their Stipulation of Dismissal of Defendant Officers Simmons, Paske, and Bogany. [Dkt. 40 at 1]. Because Simmons, Paske, and Bogany are no longer parties, the Court limits its recitation of the facts to those centering upon Detectives Barker and Middleton, as well as the City of Livingston. It likewise limits its consideration of the motion to the portions relevant to the remaining parties.

Brandon Michael White runs "America First," with the goal of "effect[ing] as much change as I can, with as much civil disobedience as the law allows, and I deem appropriate." *Id.*

During the afternoon of February 4, 2022, the Plaintiffs all met at Trimble's apartment to make posters for a protest. [Dkt. 39 at p. 3]. While the Plaintiffs were at Trimble's home, Trimble's neighbors made two 911 calls reporting a man carrying a gun with a silencer outside of Trimble's apartment. *Id.* When police arrived, they noticed a cell phone propped up in one of the apartment's windows, apparently recording. *Id.* at p. 4. The Plaintiffs were also recording the police themselves on their own phones. *Id.* After identifying Plaintiff Rankin as the subject of the calls, the officers requested the silencer's papers. *Id.* Rankin refused. *Id.* Once they determined no one was in danger, the officers—who at this point included Defendant Detective Barker—left without filing citations or making any arrests. *Id.* However, they did leave with a suspicion that the Plaintiffs had "attempted to create the appearance of an emergency or threat so that the officers would arrive." *Id.*

During the evening hours of the same day, the Plaintiffs drove around Livingston to find cops to watch. *Id.* Driving a blue car, they began to follow an officer on patrol. *Id.* at 5. After noticing that he had a tail, Officer Christopher Simmons[2] pulled into a gas station for a drink. *Id.* The Plaintiffs followed him and backed into a space to await him. *Id.* When the officer left, the Plaintiffs left with him. *Id.* The Plaintiffs stopped following him once they determined that the officer had noticed them. *Id.*

Later during the same evening, after nightfall, the Plaintiffs saw Officer Simmons outside the police station speaking to another officer, Tito Reyes. Recognizing the vehicle, Simmons attempted to stop it by yelling "Hey!" and waving. *Id.* The Plaintiffs did not stop, and Officer Reyes followed them in his patrol car. *Id.* at pp. 5–6. Reyes observed that the driver, who is not a

---

[2] As previously noted, Officer Simmons is no longer a defendant in this lawsuit.

party to this action, was wearing a load-bearing, military-style vest of some kind. *Id.* at p. 6.[3] Reyes called Simmons to tell him what he had seen. *Id.*

Simmons then saw the Plaintiffs and the non-party driver park near the police station door most officers use for entry and exit. *Id.* Simmons, determining that the Plaintiffs were in "a tactical position," turned on his patrol car's lights and parked so the Plaintiffs could not leave. *Id.* The Plaintiffs filmed the ensuing discussion with the police. *Id.* at pp. 6–7. During and afterwards, the Plaintiffs "admit they were intentionally trying to bait the officers into a police response." *Id.* at p. 8.

The following day, on February 5, 2022, Livingston Police Chief Matthew Parrish was debriefed on the events involving the Plaintiffs. *Id.* at p. 9. Polk County District Attorney Lee Hon advised on possible charges, stating that false report to induce emergency response would be an appropriate charge for the events surrounding the earlier handgun and silencer call. *Id.* District Attorney Hon also stated that the evening events at the police station were grounds for engaging in organized criminal activity and obstruction or retaliation charges. *Id.*[4] Detective Barker was assigned to the false report incident, and Detective Middleton to the organized criminal activity charge. *Id.* Two separate warrants were issued for each plaintiff from each detective on February 9, 2022. *Id.* at p. 10 (citing pertinent exhibits).

The Plaintiffs allege that Detectives Barker and Middleton conspired with other members of the City of Livingston's police department, including Police Chief Matthew Parrish, "to intentionally and knowingly harm" the Plaintiffs "by unlawful acts in retaliation for their status as independent journalists and activists." [Dkt. 14 at ¶ 45]. They also claim that Detectives Barker

---

[3] The Court notes that there is some dispute over the contents of the vest and when the driver donned it. However, this dispute is not material to the motion presently considered.
[4] Arrest warrants were ultimately issued to all three Plaintiffs for false report to induce emergency response and engaging in organized criminal activity. [Dkt. 39 at p. 9].

and Middleton lied and omitted "information essential for a probable cause determination so they could obtain arrest warrants against" the Plaintiffs. *Id.* at ¶ 46.

The Plaintiffs specifically alleged the following against Detective Barker in their Second Amended Complaint:

- He "toss[ed] out the totality of the circumstances" and "use[d] a number of writing tactics including slant to transform a benign misunderstanding into criminal activity" when he drafted the arrest warrants for the false report to include emergency response charges. *Id.* at ¶ 49.

- He "exclude[d] the fact that the police knew who had called 9-1-1," meaning one of Trimble's neighbors and that neighbor's boyfriend. *Id.* at ¶ 50.

- He also "selected facts out of context to create a picture of behavior that seemed suspicious," including leaving out additional facts about the situation, which "deprived the magistrate judge of information he should have been able to consider before he agreed to sign the arrest warrant." *Id.* at ¶¶ 51–53.

- He made "strategic word choice[s] to make [the Plaintiffs'] actions seem insurrectionary and the officers' common place," in addition to "passive verb choice to shift the blame onto Plaintiff Rankin." *Id.* at ¶¶ 55–56.

- He wrote three "identical" affidavits, without explaining how each plaintiff "had allegedly committed the crime." *Id.* at ¶ 57.

Additionally, the Plaintiffs allege the following against Detective Middleton:

- In writing his affidavit he did "away with any facts that could conceivably dispel probable cause" and "use[d] a number of writing tactics including slant; logical fallacies; and even lying to transform a series of unrelated events into criminal activity." *Id.* at ¶ 62.

4

- He "exclude[d] the fact that no crime had been committed," "tried to cleverly hide that he had no personal knowledge of the validity of any of the information to which he was swearing," and "failed to provide any sources for his information." *Id.* at ¶ 63–64.

- He "presented facts out of context to create a picture of suspicious behavior." *Id.* at ¶ 65; *see also id.* at ¶¶ 66–70.

- He "used careful word choice to make the [p]laintiffs' actions seem insurrectionary and the officers' common place," "resorted to logical fallacies . . . [including] an alarming statement to add a touch of hysteria," and "lied" several times throughout. *Id.* at ¶ 71–73; *see also id.* at ¶¶ 74–80.

- He drafted four "essentially identical" affidavits, without any variation to explain how each plaintiff had allegedly committed the crime. *Id.* at ¶ 81.

Lastly, the Plaintiffs allege the following against the City of Livingston:

- That Police Chief Matthew Parrish allowed "violations of ethics, duty, and law" and "also approved of them." *Id.* at ¶¶ 85–86.

- That Chief Parrish "released an official statement" in the form of a Livingston Police Department press release that "show . . . that these police officers find it disturbing when someone else films them." *Id.* at ¶¶ 86, 90.

- That Chief Parrish was acting as the relevant "final policymaker" for the City of Livingston. [Dkt. 47 at p. 21].

Based on these allegations, the Plaintiffs allege liability under 42 U.S.C. § 1983 for (1) First Amendment retaliation against Detectives Barker and Middleton, (2) unlawful arrest under the Fourth Amendment against Detectives Barker and Middleton, (3) malicious prosecution against Detectives Barker and Middleton, and (4) that the City of Livingston is liable for the

5

detectives' behavior under *Monell v. Department of Social Services*, 463 U.S. 658, 691 (1978). [*See* Dkts. 14, 47].

### B. Procedural Background

The Plaintiffs filed their original complaint on February 4, 2024. [Dkt. 1]. That complaint and subsequent amended complaints filed for each plaintiff separately were stricken for length violations. [Dkt. 3, 4, 5, 6, 12]. The Plaintiffs then filed their live Second Amended Complaint on April 19, 2024, naming the City of Livingston and Officers Barker, Bogany, Paske, Middleton, and Simmons as defendants. [Dkt. 14]. On June 5, 2025, the Defendants filed the pending motion for summary judgment under Federal Rule of Civil Procedure 56(c). [Dkt. 39]. The Plaintiffs dismissed their claims against Bogany, Paske, and Simmons with prejudice. [Dkt. 40]. The Defendants then filed a supplemental motion for summary judgment on June 30, 2025. [Dkt. 45]. Plaintiffs filed their responses to the supplemental motion, arguing that they plausibly alleged their claims against Detectives Barker and Middleton, as well as the City of Livingston. [Dkt. 47, 48]. The Defendants replied. [Dkt. 54]. The Defendants' motion for summary judgment and supplemental motion for summary judgment are now ripe for review.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005); FED. R. CIV. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV*, 420 F.3d at 536. "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences must be drawn in favor of the nonmoving party. *Smith v. Amedisys Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). There is no genuine issue of material fact if, when the evidence is viewed in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the

nonmoving party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (citations omitted).

If the dispositive issue is one on which the nonmoving party has the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating that there is no evidence in the record to establish an essential element of the nonmovant's claim. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (internal citations omitted).

If, under the first option, the nonmoving party cannot point to evidence sufficient to dispute the movant's contention that there are no disputed facts, the moving party is entitled to summary judgment as a matter of law. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Under the second option, the nonmoving party may defeat the motion by pointing to "supporting evidence already in the record that was overlooked or ignored by the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332–33 (1986) (Brennan, J., dissenting). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Similarly, "'complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Ruffin v. BP Expl. & Prod., Inc.*, 137 F.4th 276, 286 (5th Cir. 2025) (Elrod, C.J.) (quoting *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)).

If the nonmoving party can meet its burden under either of these scenarios, the burden shifts back to the movant to demonstrate the nonmovant's inadequacies. *Celotex*, 477 U.S. at 332–33. If the movant meets this burden, "the burden of production shifts [back] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or

(3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."

*Celotex*, 477 U.S. at 332 n.3. "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial." *Parekh v. Argonautica Shipping Invests. B.V.*, No. CV 16-13731, 2018 WL 295498, at *3 (E.D. La. Jan. 4, 2018) (quoting *Celotex*, 477 U.S. at 332 n.3).

### III.   DISCUSSION

Here, the Plaintiffs seek recovery under 42 U.S.C. § 1983. Against Barker and Middleton, they allege unlawful arrest, malicious prosecution, and First Amendment retaliation. [Dkt. 47 at p. 3]. Furthermore, the Plaintiffs allege *Monell* liability against the City of Livingston. *Id.*

### A.  Officer Liability Under 42 U.S.C. § 1983

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)); *see* 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho*, 185 F.3d at 525 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). Once an official pleads the defense of qualified immunity, "the burden shifts to the plaintiff to rebut it." *Hathaway v. Bazany*, 507 F.3d 312, 319

8

(5th Cir. 2007) (emphasis omitted) (quoting *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003)). The qualified immunity defense has two prongs: (1) "whether an official's conduct violated a statutory or constitutional right of the plaintiff," and (2) "whether the right was clearly established at the time of the violation." When a plaintiff brings claims against multiple defendants and "the defendants have not acted in unison, qualified immunity claims should be addressed separately for each individual defendant." *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (quotations and citation omitted).

### i.    Unlawful Arrest

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)); *see* U.S. Const. amend. IV. A viable false arrest claim therefore "plausibly allege[s] that [the defendant] 'did not have probable cause to arrest [the plaintiff].'" *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (Elrod, J.) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "Probable cause requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (Jolly, J.) (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest [is] sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Westfall v. Luna*, 903 F.3d 534, 542–43 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).

An arrest warrant "presumptively establishes probable cause." *Terwilliger v. Reyna*, 4 F.4th 270, 285 n.10 (5th Cir. 2021). However, this "presumption can be attacked," often "through a [*Franks v. Delaware*] claim." *Id.* Under *Franks v. Delaware*, 438 U.S. 154 (1978), "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false

statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey*, 901 F.3d at 494 (quoting *Franks*, 438 U.S. at 155–56). An affiant's "'negligence alone will not defeat qualified immunity'" under *Franks*. *Winfrey*, 901 F.3d at 494 (quoting *Brewer v. Hayne*, 860 F.3d 819, 825 (5th Cir. 2017)). "'[A] proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product of deliberate falsehood or of reckless disregard for the truth.'" *Winfrey*, 901 F.3d at 494 (quoting *United States v. Martin*, 615 F.2d 318, 325–26 (5th Cir. 1980)) (alteration in original) (internal quotation omitted). False statements under *Franks* can include "material omissions." *Winfrey*, 901 F.3d at 494.

Here, the Plaintiffs allege they were falsely arrested without probable cause for false reports to induce emergency response[5] and engaging in organized criminal activity.[6] [Dkt. 47 at pp. 8, 11]. The arrest warrants were drafted by two different detectives. Detective Barker drafted the arrest warrant for the false reports to induce emergency response, and Detective Middleton drafted the arrest warrant for organized criminal activity. *Id.* Each is addressed in turn.

### a. Detective Barker

As mentioned above, Detective Barker drafted the arrest warrants for false reports to induce emergency response. The Defendants (here, the movants) argue that "there are no untrue statements" in the affidavit and that the Plaintiffs do not point to "statements that are false or perjurious or a material fact that was omitted." [Dkt. 39 at pp. 20, 21]. They also contend that

---

[5] A person commits the false report to induce emergency response offense "if (1) the person . . . causes a report of a criminal offense or an emergency to be made. . .  (2) the person knows that the report is false; (3) the report causes an emergency response . . . and (4) in . . . causing the report to be made, the person is reckless with regard to whether the emergency response . . . may directly result in bodily injury to another person." TEX. PENAL CODE § 42.0601(a).

[6] A person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination . . . the person commits or conspires to commit . . . any offense under Chapter 36." TEX. PENAL CODE § 71.02(a)(9). Chapter 36 provides that an offense can be found if "a person . . . intentionally or knowingly . . . threatens to harm another by an unlawful act . . . on account of the service of another as a . . . public servant." TEX. PENAL CODE § 36.06(a).

Detective Barker "reviewed and relied on the offense report, the body camera footage, and what he personally saw [at] the scene, when preparing his arrest warrant affidavit." *Id.* at 22. This shows, the Defendants argue, that Detective Barker did not act unreasonably.

The Plaintiffs disagree and argue several areas of the record undermine the Defendants' version of events. Defendants filed a Reply to the Plaintiffs' Response in which they make several counterarguments. Each is considered point for point.

First, the Plaintiffs argue that the 911 report was truthful, and that Detective Barker admitted as much. [Dkt. 47 at p. 9, 10]. The related argument is that one of the reporting officers agreed that "nothing ended up being false as to what was reported." [Dkt. 47 at p. 10]. Essentially, the Plaintiffs' argument is that the 911 report was truthful in its subject matter—that someone was carrying a gun with a silencer attached—and therefore "the charge becomes legally impossible as a matter of law." [Dkt. 47 at p. 9]. On this point Defendants contend that the Plaintiffs "manipulate the language" of the underlying Texas statute. [Dkt. 54 at p. 3]. Someone can commit the false report offense if they cause a *truthful* report to be made of an otherwise *false*, or contrived, emergency. *Id.* Here, "Detective Barker explained in his deposition that he did not believe that [the neighbor] provided a 'false report,' but her perception of the emergency is what is false, and Rankin knew it." *Id.* The Plaintiffs' arguments on this score are therefore not enough to demonstrate the existence of a genuine dispute of material fact.

Second, Detective Barker "could only point to plaintiffs having cameras ready to film the officers when they arrived" as "evidence plaintiffs intended anyone to call 911." [Dkt. 47 at p. 9, 10].[7] The Defendants counter that "Detective Barker clearly identified evidence that he reasonably

---

[7] The Plaintiffs also argue that "following and filming police officers" is protected speech, and therefore incapable of supporting probable cause. [Dkt. 47 at p. 12]. However, an "officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat." *Riechle v. Howards*, 566 U.S. 658, 668 (2012) (Thomas, J.). Nevertheless, the totality of the circumstances of the two events provide enough support for arrest even without considering the Plaintiffs' filming.

believed established the Plaintiffs' intent to cause an emergency response from law enforcement." [Dkt. 54 at p. 3]. The Plaintiffs do not argue that this evidence was false, only that it is not enough to demonstrate the intent requirement under the Texas statute. However, this is relevant evidence that tends to support probable cause. Further, Plaintiffs do not point to any otherwise exculpatory evidence that was excluded from the affidavit, which the Defendants point out. [Dkt. 54 at p. 3]. This argument is more a collateral attack on the affidavit's probable cause, rather than any falsehoods or omissions present in it. It therefore does not overcome Detective Barker's qualified immunity defense, or show a genuine dispute of material fact.

Third, Detective Barker "admitted he never spoke [with the reporting officers] before writing his affidavit." [Dkt. 47 at p. 9, 10]. A related argument is that he "did not make any effort to investigate the actual source of the [911 calls]." *Id.* at p. 11. Like the previous argument, it does not tend to show that Barker made any false statements or omitted relevant information, or that taking these steps would have changed the affidavit. Given that Barker relied upon "the offense report, the body camera footage, and what he personally saw [at] the scene," it is unclear what would have been different if Barker had spoken with any of the reporting officers—the Plaintiffs do not provide any alternative theory. [Dkt. 39 at p. 22]. Rather, the Plaintiffs take issue with the manner in which Barker prepared the affidavit. This is not enough for the Plaintiffs to rebut Barker's defense of qualified immunity, or show that he acted unreasonably. It therefore does not show a genuine dispute of material fact.

Fourth and lastly, "Detective Barker admitted that all 911 calls came from [the neighbor or her guest]," which "destroys any claim of multiple corroborating reports." [Dkt. 47 at p. 9, 10]. The Defendants counter that what Detective Barker actually said was "that the agency received two 911 calls," and that "regardless of whether the calls came from within the same house or building, it is not untruthful that dispatch[] received two separate calls, from two different phone

numbers, from two different individuals." [Dkt. 54 at p. 5]. This is also not enough for the Plaintiffs to rebut Barker's defense of qualified immunity, or show that he acted unreasonably. It therefore does not show a genuine dispute of material fact.

The above arguments from Plaintiffs fail to demonstrate the continued existence of a genuine dispute of material fact. Accordingly, the Court **GRANTS** the motion for summary judgment on the false arrest claim as to Barker.

### b. Detective Middleton

As previously mentioned, Detective Middleton drafted the arrest warrants for the engaging in organized criminal activity charges. The Defendants reapply their arguments for Barker to Detective Middleton, and argue that "there are no untrue statements" in the affidavit and that the Plaintiffs do not point to "statements that are false or perjurious or a material fact that was omitted." [Dkt. 39 at pp. 20, 21]. They also indicate that Detective Middleton "reviewed and relied on the incident report, body camera footage of both Officer Simmons and Officer Reyes, and reviewed a video one of the plaintiffs had posted to YouTube when preparing his arrest warrant affidavit." *Id.* at 22. This shows, the Defendants argue, that Detective Middleton did not act unreasonably.

As was the case with Detective Barker, the Plaintiffs disagree and indicate several areas of the record that undermine the Defendants' version of events. Defendants filed a Reply to the Plaintiffs' Response in which they make several counterarguments. Each is considered in turn.

First, the Plaintiffs argue that Detective Middleton "repeatedly failed to identify specific articulable facts supporting the charges, instead relying on vague 'totality of circumstances' reasoning." [Dkt. 47 at p. 11]. Relatedly, the Plaintiffs point to the fact that Detective Middleton could not "identify articulable facts" apart from "speculat[ion] that 'they could have had weapons' that were 'never discovered.'" [Dkt. 47 at pp. 11–12, quoting Dkt. 47-1 at p. 39:14–16]. The Defendants indicate that there are numerous facts in the affidavit showing probable cause,

13

including "'a small 4 door blue car stalking [Officer Simmons] as he drove his marked patrol unit,'" "'Officer Simmons was concerned for his safety due to [the] recent killings and ambush of police officers while on duty,'" "'no one ever excited the vehicle while it waited on Officer Simmons to exit the business . . . and the vehicle continued to stalk Officer Simmons as he exited the parking lot.'" [Dkt. 54 at p. 4, citing Dkt. 47-1 at p. 99]. Further, the affidavit alleges the non-party driver "was wearing a tan colored ballistic body armor vest with loaded ammunition." [Dkt. 47-1 at p. 100]. The record contradicts the Plaintiffs on this point, and therefore their use of it cannot establish a genuine dispute of material fact.

Second, the Plaintiffs argue that there was no evidence of the predicate offense—here, obstruction or retaliation. They claim that Detective Middleton described the video as "show[ing] 'nothing unusual'"—seemingly implying the Plaintiffs' behavior was normal. [Dkt. 47 at p. 12, quoting Dkt. 47-1 at p. 42:12]. As Defendants indicate, however, this quote is part of a larger description of how the *officers* approached the vehicle—"with caution just like we're trained to do." [Dkt. 54 at p. 5, quoting Dkt. 54-2 at 5:8–9]. Again, the record contradicts the Plaintiffs. This does not explain how the affidavit fails under *Franks*, and in turn it fails to show a genuine dispute of material fact.

Third, the Plaintiffs argue that there was a "systematic exclusion of exculpatory evidence" because "Detective Middleton admitted he never spoke with Simmons before drafting his affidavit" and "felt 'urgency' to rush the warrant to a judge based on [Police Chief Parrish's] orders rather than conducting proper investigation." [Dkt. 47 at p. 12, quoting Dkt. 47-1 at p. 38:9]. The Plaintiffs do not allege the existence of exculpatory evidence, nor do they point to any, despite their claim that it was excluded. This likewise cannot show falsity under *Franks*, and cannot show a genuine dispute of material fact.

Fourth, the Plaintiffs allege that Detective Middleton "swore falsely that Simmons was 'concerned for his safety due to [the] recent killings and ambush of police officers." [Dkt. 47 at p. 32, citing Dkt. 47-1 at pp. 99, 103, 107]. Their reasoning is that if Detective Middleton did not speak to Officer Simmons in drafting his affidavit, Middleton could not know Simmons's state of mind. The Defendants argue that this statement "is consistent" with the narrative Simmons attached to his incident report, which Middleton reviewed. [Dkt. 54 at p. 6]. Officer Simmons's incident report states that, while he was at the gas station, he "watched the blue car to see if anybody was going to get out, as the vehicle seemed suspicious to me with the recent targeting and assassinations of police officers within the last few days and weeks." [Dkt. 39-11 at p. 32]. While this could tend to show that Officer Simmons was afraid for his life, it does not literally state as much.

Even assuming that this was an intentional, knowing, or reckless misrepresentation on Middleton's part, the second part of *Franks* requires that the Court set it aside to see if the affidavit still supports a showing of probable cause. *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (citing *Franks v. Delaware*, 438 U.S. 154, 156 (1978)). If "probable cause for the warrant survives the deleted false statements and material omissions," there has been no *Franks* violation. *Winfrey*, 901 F.3d at 495. Here, given the facts recited above, even without the statement regarding Officer Simmons's state of mind the affidavit still contains enough to show probable cause. The Plaintiffs therefore fail to overcome qualified immunity and cannot demonstrate a continued genuine dispute of material fact.

Fifth and finally, the Plaintiffs argue that Simmons's release of the Plaintiffs "contradicts any claim that [the ballistic/military-style/load-bearing vest worn by the non-party driver] created credible safety concerns warranting criminal charges." [Dkt. 47 at p. 31]. They make a similar argument with regard to Simmons's "I don't care if they had a weapon" comment. [Dkt. 47 at p.

13]. The first argument on the release of the Plaintiffs does not go to falsity, misrepresentation, or omission in the affidavit—as was the case above with Detective Barker, this is a collateral attack on the warrant's probable cause. It does not support a *Franks* claim. The second argument, as Defendants mention, is a quote taken out of context. Simmons's full statement reads "I don't care if he has a weapon, but why are they following the police around, why are they acting suspicious." [Dkt. 54 at p. 5]. The Plaintiffs cannot create a genuine dispute of material fact through reliance on incomplete quotes.

The above demonstrates that the Plaintiffs have not overcome the qualified immunity defense, nor have they shown a continued genuine dispute of material fact. Therefore, the Court **GRANTS** the motion for summary judgment on the false arrest claim against Defendant Middleton.

### ii.    Malicious Prosecution

To state a claim of malicious prosecution, a plaintiff must allege:

(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024) (Duncan, J.) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)).

Here, the Defendants argue in their motion for summary judgment that the Plaintiffs have not shown a malicious prosecution claim. They advance four reasons. First, that there was probable cause for the prosecutions. [Dkt. 39 at p. 23]. Second, that the chain of causation was broken by the magistrate who issued the arrest warrants. *Id.* at pp. 23–24. Third, the Defendant Detectives did not act with malice. *Id.* at p. 24. Fourth, the Detectives "acted objectively reasonable and relied on the advice of counsel." *Id.* at 24–25.

16

The Plaintiffs make five broad counterarguments in their response. First, that the "video evidence systematically contradicts every material claim in defendants' sworn affidavits." [Dkt. 47 at p. 37]. Second, that the Defendants cannot claim reasonable reliance on reports and videos "when the underlying evidence contradicts the charges." *Id.* at p. 38. Third, that the affidavits, even if corrected, would not show probable cause. *Id.* at pp. 18, 39. Fourth, that false report charges were filed without intermediary review, and that for the conspiracy charges the grand jury deliberations were tainted. *Id.* at pp. 16, 17, 40. Fifth, that the advice of counsel defense is not available. *Id.* at pp. 19, 40. The Court now considers each, as well as the Defendants' Reply arguments, in more detail as they relate to each of the defendants.

### a.   Detective Barker

The Court groups the arguments into four broad categories: probable cause, chain of causation, malice, and the advice of counsel defense.

### *1.   Probable Cause*

The Court first considers the Defendants' argument that probable cause existed. As to Detective Barker, the Court construes the Plaintiffs' Response as having made two counterarguments on this point.  First, that the Defendants cannot claim reasonable reliance on reports and videos "when the underlying evidence contradicts the charges." [Dkt. 47 at p. 38]. Second, that the affidavits, even if corrected, would not show probable cause. *Id.* at pp. 18, 39. Each is discussed separately.

The Plaintiffs' first counterargument, that the "underlying evidence contradicts the charges," relies on statements the Court discussed above as relating to the false arrest claim. There are several components. Specifically, that Detective Barker "admitted the 911 call was truthful." [Dkt. 47 at p. 38]. The Court previously addressed this statement above, and the same reasoning applies as it is used again here. Next, the Plaintiffs indicate that the reporting officers "made no

arrests and concluded insufficient evidence existed." *Id.* This appears to be an argument that probable cause cannot exist when two officers disagree—here, the reporting officer and the detective. However, "[t]he Fifth Circuit has held 'if officers of reasonable competence could disagree as to whether probable cause existed, [qualified] immunity should be recognized.'" *Smith v. Lopez*, 519 F. Supp. 3d 395, 408 (W.D. Tex. 2021) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)) (cleaned up). *Smith* involved two officers' disagreement over whether probable cause existed, and there the court upheld qualified immunity. *Smith*, 519 F. Supp. 3d at 408. Therefore, this statement also cannot show a genuine dispute of material fact.

The last statement Plaintiffs provide in support of their first counterargument is Detective Barker's admission "that he observed power cables indicating permanent installation [of the cell phone propped in the window] and acknowledged it was 'possible' the cameras 'could have been installed long before this incident.'" [Dkt. 47 at pp. 38–39, quoting Dkt. 47-1 at p. 25:11–15]. They contend that "[d]espite this obvious exculpatory evidence, [Barker] 'did not investigate whether the device in the window was installed specifically for this incident or was preexisting.'" [Dkt. 47 at p. 39, quoting Dkt. 47-1 at p. 25:11–15]. Even assuming Detective Barker intentionally, knowingly, or recklessly misrepresented or excluded this fact, the second part of *Franks* requires that the Court consider if the affidavit still supports a showing of probable cause. *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (citing *Franks v. Delaware*, 438 U.S. 154, 156 (1978)). There is no *Franks* violation if "probable cause for the warrant survives the deleted false statements and material omissions." *Winfrey*, 901 F.3d at 495. Here, the affidavit still contains enough to show probable cause. Therefore, the first counterargument against the existence of probable cause fails.

Now for the second counterargument—that the corrected affidavits do not show probable cause. The Plaintiffs recite arguments the Court has already discussed—that the 911 "call was

admittedly truthful," "[n]o criminal activity was reported," and that the charge was "legally impossible under Texas law." [Dkt. 47 at p. 39]. These arguments also fail for the same reasons already provided. Therefore, the Plaintiffs have failed to show a genuine dispute of material fact as to the nonexistence of probable cause.

### 2. Chain of Causation

The Defendants assert that the causal chain was broken when the magistrate issued the arrest warrants. [Dkt. 39 at pp. 23–24].[8] The Plaintiffs disagree and argue there is an exception for "when the actions of the defendant in some way tainted the deliberations of that intermediary." [Dkt. 47 at p. 18 (citing *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010))]. Here, that "taint" was Detective Barker's "statement that the 911 call was 'false' and NO probable cause remains because the call was admittedly truthful and described no criminal activity." *Id.*, citing Dkt. 47-1 at pp. 90, 93, 96. The Court has already considered and rejected these arguments on the alleged falsity of Detective Barker's affidavit, and it rejects them again here.

Similarly, the Plaintiffs also contend that the chain of causation was not broken because "the misdemeanor false report charges . . . were filed directly by county prosecutors without grand jury review." [Dkt. 47 at p. 16]. Grand jury review is not required; the magistrate is sufficient to break the chain. *See Cuadra*, 626 F.3d at 813 ("grand jury, or other independent intermediary"). Thus, Plaintiffs fail to demonstrate a genuine dispute of material fact as to the required causal chain.

### 3. Malice

The Defendants argue that Detective Barker did not act out of malice toward the Plaintiffs. [Dkt. 39 at p. 24]. Here, the Plaintiffs have not shown facts demonstrating that Detective Barker

---

[8] In their Reply, the Defendants contend that the district attorney relied "on the police narratives relating to the incidents which were presented by Chief Parrish that prompted the charges." [Dkt. 54 at p. 6]. This aligns with the timeline established in the record. The affidavits and arrest warrants were written *after* the district attorney advised that he would support charges. This cuts against the Plaintiffs' argument that the affidavits prompted prosecution.

acted with malice toward the Plaintiffs. A malicious prosecution claim requires a showing of malice. The Plaintiffs have therefore failed to demonstrate one of the essential elements of malicious prosecution against Detective Barker. "Complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial'" and warrants summary judgment. *Ruffin v. BP Expl. & Prod., Inc.*, 137 F.4th 276, 286 (5th Cir. 2025) (Elrod, C.J.) (quoting *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)). Under *Ruffin*, this alone is sufficient to grant summary judgment in favor of Defendant Detective Barker on the malicious prosecution claim.

### 4.  *Advice of Counsel Defense*

Because the Plaintiffs have not shown a genuine dispute of material fact, the Court does not reach the arguments discussing the advice of counsel defense. Accordingly, the Court **GRANTS** the motion for summary judgment on the claim of malicious prosecution in favor of Defendant Detective Barker.

### b.  **Detective Middleton**

Here the Court also groups the arguments as they relate to Detective Middleton into four broad categories: probable cause, chain of causation, malice, and the advice of counsel defense.

### 1.  *Probable Cause*

The Court first considers the Defendants' argument that probable cause existed. As to Detective Middleton, the Court construes the Plaintiffs' Response as having made three counterarguments on this point.  First, that the "video evidence systematically contradicts every material claim in defendants' sworn affidavits." [Dkt. 47 at p. 37]. Second, that the Defendants cannot claim reasonable reliance on reports and videos "when the underlying evidence contradicts the charges." *Id.* p. 38. Third, that the affidavits, even if corrected, would not show probable cause. *Id.* at pp. 18, 39. Each is discussed separately.

The first counterargument contains two separate components. The Plaintiffs argue that Detective Middleton's affidavit contradicted the video evidence. [Dkt. 47 at p. 37]. According to the Plaintiffs, the affidavit "describe[s] threatening conduct requiring organized crime charges," but "Middleton admitted Officer Simmons' own body camera and dash camera shows 'nothing unusual'—standard traffic stop behavior." *Id.*, citing Dkt. 47-1 at p. 42:6–20 and body camera footage. The Court previously discussed Defendant Middleton's "nothing unusual" statement. The Defendants argue that read in context, Detective Middleton was discussing the manner in which Officer Simmons approached the stop and describing it as consistent with their training. [Dkt. 54 at p. 4]. The Court agrees; this statement does not describe the *Plaintiffs'* behavior as "nothing unusual," as the Plaintiffs seem to imply. Therefore, the Plaintiffs cannot show a genuine dispute of material fact using this statement.

The second part of this counterargument is that Officer Simmons's "fear claims" are inconsistent with the video evidence. [Dkt. 47 at pp. 37–38]. As support, the Plaintiffs point to Defendant Middleton's affidavit claim (which they describe as "Simmons feared for his safety due to threatening behavior"), what the video portrayed ("Middleton testified Simmons approached 'with caution just like we're trained to do'—'Nothing unusual'"), and Officer Simmons's statement from the body camera footage ("Video shows Simmons told plaintiffs 'I don't care if they had a weapon'"). *Id.* at pp. 37–38, citing Dkt. 47-1 at p. 42:6–22 and body camera footage.

The portion of the affidavit the Plaintiffs highlight[9] describes Officer Simmons's second encounter with the Plaintiffs outside the police station, which is the context for Defendant Middleton's and Officer Simmons's statements. [*See* Dkt. 47-1 at pp. 99, 103, 107 ("Affiant would show [the Plaintiffs' circling the officers, the non-party driver's donning of a ballistic vest] and

---

[9] The Court notes that there are two portions of Detective Middleton's affidavit relevant to Officer Simmons: from earlier that evening outside the gas station, and later outside the police station. The Plaintiffs do not specify which portion they are discussing, but given the other two statements Plaintiffs offer in making this argument, the Court assumes the latter.

Officers [Simmons and Reyes] felt as if [the Plaintiffs] were about to commit a criminal act and cause them bodily injury and/or death")]. Even so, Defendant Middleton's and Officer Simmons's statements do not contradict the affidavit. That Officer Simmons approached the Plaintiffs in a manner consistent with his training does not show that he was unconcerned.[10] The Defendants also indicate that Officer Simmons's full statement to Officer Reyes was "I don't care if he has a weapon, but why are they following the police around, why are they acting suspicious." [Dkt. 54 at p. 5]. The full statement demonstrates consistency, not inconsistency, with safety concerns. Therefore, this collection of statements do not support a genuine dispute of material fact.

The Plaintiffs' second counterargument, that the "underlying evidence contradicts the charges," relies on several components. The Plaintiffs indicate the reporting officers "made no arrests and concluded insufficient evidence existed." [Dkt. 47 at p. 38]. The Plaintiffs made the same argument against Detective Barker, and the outcome is the same against Detective Middleton for the same reasons; it cannot support a genuine dispute of material fact.

In support of this same counterargument Plaintiffs also indicate that the "video evidence shows standard behavior, not the threatening conduct described in affidavits." [Dkt. 47 at p. 38]. No citations to the record are provided to support this statement, but the Court construes this argument as the same one already considered above, as relating to the first counterargument. Again, the standard behavior was Officer Simmons's—the evidence the Plaintiff provides does not support an argument that the *Plaintiffs'* behavior was standard.

Now for the third counterargument—that the corrected affidavits do not show probable cause. The Plaintiffs contend that the "[v]ideo shows 'nothing unusual,'" there was "[n]o evidence of the required 'combination,'" and there was "[n]o evidence of [the] underlying predicate

---

[10] The conclusion is the same for the Plaintiffs' similar subargument: that Officer Simmons without "safety precautions: approached alone, no backup called, weapon never drawn, walked directly to vehicle." [Dkt. 47 at p. 38]. Detective Middleton described this behavior as consistent with their training. [Dkt. 47-1 at p. 42:6–20].

offense." [Dkt. 47 at p. 39]. The first statement fails for the same reasons already provided. As for the second, under Texas law "to satisfy the combination element [of the engaging in organized criminal activity charge], the State must prove that there was an agreement to act together in a continuing course of activity." *Smith v. State*, 500 S.W.3d 685, 690 (Tex. App. 2016) (citing *Ledet v. State*, 177 S.W.3d 213, 219 (Tex. App. 2001) (cleaned up)). Additionally, the State must demonstrate "'participation of at least three of the named members of the combination.'" *Smith*, 500 S.W.3d at 691 (quoting *Rodriguez v. State*, 90 S.W.3d 340, 354 (Tex. App. 2001)). Given the law, there is more than enough evidence in the affidavit to show probable cause that the Plaintiffs agreed "to act together in a continuing course of activity"—here, the three Plaintiffs' presence in the same vehicle, which the Defendants mention. [Dkt. 54 at p. 4].

Lastly, there was also evidence of the underlying predicate offense: obstruction or retaliation. A person commits this offense if they "a person . . . intentionally or knowingly . . . threatens to harm another by an unlawful act . . . on account of the service of another as a . . . public servant." Tex. Penal Code § 36.06(a). The Defendants provide several examples: that the Plaintiffs "stalked Officer Simmons," "rolled by the Livingston Police Department but failed to stop when approached by Officer Simmons," the non-party driver "[got] out of his vehicle [and] put on a ballistic style vest," and that driver then "positioned that vehicle in what Officer Simmons perceived to be a tactical manner"—facing the door of the police station officers most frequently use. [Dkt. 39 at p. 28]. This is enough evidence to constitute probable cause for an arrest warrant. Therefore, the Plaintiffs' assertion that there is no evidence fails.

Given the above, the Plaintiffs have failed to show a genuine dispute of material fact as to the nonexistence of probable cause.

### 2. *Chain of Causation*

23

The Defendants assert that the causal chain was broken when the magistrate issued the arrest warrants. [Dkt. 39 at pp. 23–24]. The Plaintiffs disagree and argue there is an exception for "when the actions of the defendant in some way tainted the deliberations of that intermediary." [Dkt. 47. at p. 18 (citing *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010))]. As it relates to Defendant Middleton, that "taint" was his "false statements about threatening behavior, and NO probable cause remains because video that he had access to shows 'nothing unusual' and no evidence exists of the required 'combination' or predicate offense." [Dkt. 47 at p. 18, citing Dkt. 47-1 at pp. 42:12–13, 99–108]. Similarly, the Plaintiffs also argue that Middleton "systematically tainted the grand jury" by "[p]roviding only false written affidavits," "[e]xcluding all officers with exculpatory evidence," and "[m]aintaining institutional silence after filing false materials." [Dkt. 47 at p. 17]. The Court has already considered[11] and rejected the Plaintiffs' support, and it rejects that support again here. Thus, Plaintiffs fail to demonstrate a genuine dispute of material fact as to the required causal chain.

### 3.  Malice

The Defendants argue that Detective Middleton did not act out of malice toward the Plaintiffs. [Dkt. 39 at p. 24]. Additionally, the Plaintiffs have not shown facts demonstrating that Detective Middleton acted with malice toward the Plaintiffs. A malicious prosecution claim requires a showing of malice. The Plaintiffs have therefore failed to demonstrate one of the essential elements of malicious prosecution against Detective Middleton. "Complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial'" and warrants summary judgment. *Ruffin v. BP Expl. & Prod., Inc.*, 137 F.4th 276, 286 (5th Cir. 2025) (Elrod, C.J.) (quoting *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[11] The Court is unsure how to construe the "[m]aintaining institutional silence after filing false materials" statement. Given that the Plaintiffs do not provide any citation to the record or further elaborate, the Court cannot properly consider it.

Under *Ruffin*, this alone is sufficient to grant summary judgment in favor of Defendant Detective Middleton on the malicious prosecution claim.

### 4. Advice of Counsel Defense

Because the Plaintiffs have not shown a genuine dispute of material fact, the Court does not reach the arguments discussing the advice of counsel defense. Accordingly, the Court **GRANTS** the motion for summary judgment on the claim of malicious prosecution in favor of Defendant Detective Middleton.

### iii.    First Amendment Retaliation

Retaliation against a private citizen for exercising his or her free speech rights is actionable under § 1983. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996). To prevail on a First Amendment retaliation claim, a plaintiff must establish that (1) she "engaged in constitutionally protected activity"; (2) the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendant's adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002) (collecting cases). To prevail, a "plaintiff must show a causal connection between a defendants retaliatory animus and subsequent injury . . . ." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (citations omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (emphasis in original) (citation omitted).

The Fifth Circuit has recognized that "[t]o prevail on a First Amendment retaliation claim, . . . [a] plaintiff[] must plead and prove the absence of probable cause."[12] *Roy v. City of Monroe*, 950 F.3d 245, 255 (5th Cir. 2020) (citing *Nieves*, 587 U.S. at 403). The Supreme Court has aptly described the significance of the no-probable-cause requirement:

> [A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause . . . are reasonable grounds to suspend the presumption of regularity behind the charging decision, . . . and enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge.

*See Hartman*, 547 U.S. at 265 (citation omitted).

Nevertheless, *Nieves* established a "narrow" exception to the no-probable-cause showing "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. To qualify, a plaintiff must "present[] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. "Because this inquiry is objective, the statements and motivations of the particular arresting officer are 'irrelevant'" until the plaintiff has met the objective showing of similarly situated individuals. *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Here, the Defendants argue probable cause existed for the arrests. [Dkt. 39 at pp. 26–29]. The Plaintiffs disagree, and in the alternative, argue that the *Nieves* exception applies. [Dkt. 47 at pp. 26–28]. In their reply, the Defendants repeat that probable cause existed and contend that

---

[12] The Supreme Court has aptly described the significance of the no-probable-cause requirement:

> [A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause . . . are reasonable grounds to suspend the presumption of regularity behind the charging decision, . . . and enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge.

*See Hartman*, 547 U.S. at 265 (citation omitted).

*Nieves* is inapplicable. [Dkt. 54 at p. 9]. The Court considers both sets of arguments as they pertain to the individual Defendant Detectives Barker and Middleton.

### a. Detective Barker

As previously discussed, Detective Barker drafted the false report to induce emergency response arrest warrants.

### 1. Probable Cause

The Defendants argue that probable cause existed for the false report arrests. [Dkt. 39 at pp. 26–28]. As support, they recount the facts surrounding the incident: the 911 report, the nonresponsiveness of the Plaintiffs to the officers' questioning, and Plaintiffs' recording of the officers. *Id.* at p. 27. The Plaintiffs counter that a false report charge was legally impossible, the scene officers did not make arrests, and a "[s]tate judge found charges legally insufficient." [Dkt. 47 at p. 27].

The Court has already addressed the Plaintiffs' first two contentions, but has not yet considered the third. The Defendants point out the Plaintiffs do not provide citations to the record supporting that statement, and they are correct. [Dkt. 54 at pp. 9–10]. The Court construes this statement as referring to Judge Tom Brown's orders (on the State of Texas's motions) dismissing the false report charges against the Plaintiffs. [Dkt. 47-1 at pp. 111–13]. Plaintiff White's and Plaintiff Trimble's charges were dismissed "in the interest of [justice]." *Id.* at pp. 111, 112. Plaintiff Rankin's charge was dismissed for "[i]nsufficient evidence." *Id.* at 113. None were dismissed for a lack of probable cause. Further, under Texas law, "insufficient evidence to convict does not equate to a lack of probable cause to indict." *Matter of V.H.B.*, 583 S.W.3d 636, 643 (Tex. App. 2018). "That a prosecutor dismisses a case simply because she believes she has insufficient evidence to convict" is not the same as an absence of probable cause in the first instance. *Id.* Therefore, the Plaintiffs have not demonstrated a genuine dispute of material fact on the issue of probable cause.

## 2.  Nieves *Exception*

The Plaintiffs advance an alternative theory under the *Nieves* exception to the required no-probable-cause showing. They argue that this exception applies because there was "[n]o similar treatment for non-auditors engaging in comparable conduct." [Dkt. 47 at p. 28]. However, as the Defendants point out, the Plaintiffs do not provide any citations to the record, nor any evidence, as support. [Dkt. 54 at p. 9]. "Conclusory statements" without "objective evidence" are not enough for the *Nieves* exception to apply. *Grisham v. Valenciano*, 93 F.4th 903, 910 (5th Cir. 2024). Thus, the *Nieves* exception is not applicable.

The Plaintiffs have not rebutted the Defendants' assertion that there is no genuine dispute of material fact. Accordingly, the Court **GRANTS** the motion as to this claim against Defendant Detective Barker.

### b.  Detective Middleton

Detective Middleton drafted the organized criminal activity warrants.

### 1.  *Probable Cause*

The Defendants argue that probable cause existed, reciting the facts of the evening of February 4, 2022. [Dkt. 39 at pp. 28–29]. The Plaintiffs contend that there was no probable cause and repeat arguments the Court has already rejected.[13] [Dkt. 47 at p. 31–32]. The Court does so again here. The only novel argument the Plaintiffs make is that Officer Simmons "was 'relieved' to learn the individuals were First Amendment auditors and made no arrests.'" [*Id.* at p. 32, quoting Dkt. 47-1 at p. 60:4–17]. Officer Simmons's complete reasoning for ending the stop was he "felt that [the Plaintiffs] weren't there to kill us any longer and that they were there to just record us and bait us into doing something that they could post on their YouTube channel, and I was so relieved

---

[13] The Plaintiffs argue that "[s]talking [r]equires [i]ntent to [t]hreaten or [i]ntimidate." [Dkt. 47 at p. 29]. The Court does not have evidence that the Plaintiffs were charged with stalking; rather, they were charged with engaging in organized criminal activity and false report to induce emergency response. Therefore, it does not address the Plaintiffs' arguments on the insufficiency of a stalking charge.

at that fact that I let them go." [Dkt. 47-1 at p. 60:4–17]. Even if Officer Simmons did not believe he had probable cause to arrest, that mismatch with Detective Middleton's assessment is not enough to show a lack of probable cause. As the Court already noted, "[t]he Fifth Circuit has held 'if officers of reasonable competence could disagree as to whether probable cause existed, [qualified] immunity should be recognized.'" *Smith v. Lopez*, 519 F. Supp. 3d 395, 408 (W.D. Tex. 2021) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)) (cleaned up). Therefore, the Plaintiffs have not demonstrated a genuine dispute of material fact on the issue of probable cause.

### 2. Nieves *Exception*

The Plaintiffs also make a *Nieves* exception argument against Detective Middleton because there was "[n]o similar treatment for non-auditors engaging in comparable conduct." [Dkt. 47 at p. 28]. However, as the Defendants point out, the Plaintiffs do not provide any citations to the record, nor any evidence, as support. [Dkt. 54 at p. 9]. "Conclusory statements" without "objective evidence" are not enough for the *Nieves* exception to apply. *Grisham v. Valenciano*, 93 F.4th 903, 910 (5th Cir. 2024). Therefore, there are no facts supporting *Nieves*'s application to this case.

The Plaintiffs have not rebutted the Defendants' assertion that there is no genuine dispute of material fact. Accordingly, the Court **GRANTS** the motion as to this claim against Defendant Detective Middleton.

### B. City of Livingston's Liability under *Monell*

Next, the Court addresses the Plaintiffs' allegations against the City of Livingston for violations of 42 U.S.C. § 1983. Claims brought under § 1983 against government entities are commonly known as *Monell* claims. "Municipalities are not liable for the unconstitutional actions of their employees under respondeat superior." *Groden v. City of Dall.*, 826 F.3d 280, 283 (5th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 694 (1978)). But that does not mean

municipalities are immune from § 1983 liability. *See, e.g.*, *Monell*, 436 U.S. at 690 (concluding that municipalities and local government units are among those "persons" who may be sued under § 1983). "To prevail on a *Monell* claim, a plaintiff must establish (1) an official policy or custom; (2) the policymaker of that policy or custom; and (3) a constitutional violation that the policy or custom was the 'moving force' behind." *Wood v. Bexar Cnty.*, --- F.4th ---, 2025 WL 2237940, at *8 (5th Cir. Aug. 6, 2025) (Engelhardt, J.).

The Court has already granted summary judgment on the alleged constitutional violations. There is nothing left for which the City of Livingston can be held liable. *See Wood*, 2025 WL 2237940, at *10 (granting summary judgment against a defendant county after the court had concluded that no constitutional violation was found). The Plaintiffs cannot make a *Monell* liability argument without first showing a constitutional violation. Therefore, the Court also grants summary judgment in favor of the City of Livingston.

## IV.   CONCLUSION

It is therefore **ORDERED** that Defendants Kaleb Barker, Leon Middleton, and the City of Livingston's Motion for Summary Judgment [Dkt. 39] is hereby **GRANTED** as to the false arrest claim, malicious prosecution claim, First Amendment retaliation claim, and *Monell* claim.

It is also **ORDERED** that the portions of the motion pertaining to Officers Simmons, Paske, and Bogany are **DENIED** as moot. All other pending motions are **DENIED** as moot.

The Clerk is **INSTRUCTED** to close the case.

**SIGNED this 9th day of September, 2025.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge